George Edge v. Commissioner. George W. Edge, Sr. v. Commissioner. George W. Edge and Alice Edge v. Commissioner.
Edge v. Commissioner
Docket Nos. 28025, 45066, 45071.
United States Tax Court
T.C. Memo 1954-223; 1954 Tax Ct. Memo LEXIS 24; 13 T.C.M. (CCH) 1130; T.C.M. (RIA) 54329; December 16, 1954, Filed James F. Hinton, Esq., Hagedorn Building, Gadsden, Ala., for the petitioners. W. Preston White, Jr., Esq., and J. Frost Walker, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioners' income tax and penalties as follows: Penalties
Sec. 294
Sec.
Docket No.
Year
Deficiency
Sec. 293(b)
(d)(1)(A)
294(d)(2)
28025
1946
$35,534.46
$17,767.23
1947
36,401.47
18,200.74
45066
1949
5,148.80
2,574.40
$522.56
$313.55
1950
2,443.39
1,221.70
268.24
160.94
45071
1948
6,000.48
3,000.24
758.88
455.33
Three issues were raised in these proceedings: (1) Was petitioner George Edge's income understated for each of the years 1946 through 1950? (2) Was some *25 part of the deficiencies for each of the years 1946 through 1950 due to fraud with intent to evade tax? (3) Has the Commissioner correctly determined the addition to the tax pursuant to section 294(d)(1)(A) for failure to file declaration of estimated tax, and section 294(d)(2) for substantial understimate of estimated tax, Internal Revenue Code of 1939, for the years 1948 through 1950? Findings of Fact George W. Edge, sometimes called George W. Edge, Sr., and George Edge, filed his individual income tax returns for the years 1946, 1947, 1949 and 1950 with the collector of internal revenue for the district of Alabama. George W. Edge and Alice Edge, his wife, filed a joint income tax return for the year 1948 with the same collector. George W. Edge will hereinafter be referred to as the petitioner. In the years before us, petitioner was engaged in the retail and wholesale business of selling automobiles. He operated under the name of George Edge Motor Company, in Gadsden, Alabama. During the year 1950 petitioner also operated under another name. Petitioner, a man of limited formal education, did not employ a bookkeeper in his business, nor did he keep formal books. Petitioner's *26 income tax return for 1946 was prepared by an attorney, and his returns for the years 1947 through 1950 were prepared by accountants from information supplied by petitioner. During the years 1946 through 1950 petitioner's aggregate deposits were as follows: East
American
Gadsden
National
Year Ended
Bank
Bank
December 31, 1946
$124,778.86
$90,816.51
December 31, 1947
381,488.65
31,201.59
December 31, 1948
553,877.28
10,325.00
December 31, 1949
277,406.92
December 31, 1950
105,919.18
35,392.50
At times when petitioner deposited his checks he also cashed other checks. During some of the years before us petitioner received for these cashed checks the following amounts: Year Ended
Amount
December 31, 1947
$12,324.00
December 31, 1948
51,555.00
December 31, 1949
15,084.00
December 31, 1950
9,007.67
During the years 1947 through 1950 petitioner received certain checks which he negotiated; he received not less than the following amounts: Year Ended
Amount
December 31, 1947
$33,249
December 31, 1948
21,105
December 31, 1949
4,575
December 31, 1950
19,460
During the years 1946 and 1947 some of *27 petitioner's customers financed their purchases through the American Discount Company, or, as it was sometimes known, the Auto Finance Company, hereinafter referred to as the Finance Company. This company required the purchaser to make a down payment of at least one-third of the selling price of the automobile. When the sale of an automobile was to be financed by this company, petitioner would report the amount of the selling price and down payment to the Finance Company. The Finance Company would then give petitioner its check for the amount financed. The Finance Company recorded the selling price and the down payment, but all of its records for 1946 were not available. During the year 1946 petitioner received checks from the Finance Company for automobiles sold by him and which were financed by that company in the amount of not less than $84,081.42. In addition to the money received from the Finance Company petitioner received cash down payments of not less than $33,319.24 for these automobiles. He also received trade-in automobiles having a value of not less than $3,751. On occasions during the year 1946 petitionr sold some automobiles for amounts in excess of the selling price *28 reported to the Finance Company. The amount of understatement aggregated at least $4,079.80. During 1946 petitioner sold certain automobiles at least in the sum of $18,374.55 which were not financed through the Finance Company. He also received $900 from liquor sales in this year. On his individual income tax return for 1946 petitioner reported net profit as follows: Total receipts (estimated)
$98,701
Total business deductions
92,580
Net profit
$ 6,121
Respondent determined that petitioner had gross receipts and additional income for the year 1946 as follows: a. Checks payable to petitioner by
American Discount Company
$ 70,086.22
b. Cash down payments made to pe-
titioner
43,961.65
c. Value of trade-ins received by pe-
titioner
7,484.18
d. Excess payments received by pe-
titioner not reported to Ameri-
can Discount Co
5,281.40
e. Automobiles sold to persons which
were not financed with Ameri-
can Discount Co.
31,848.51
f. Income from sale of liquor
900.00
Gross business receipts
159,561.96
Reported receipts
98,701.00
Unreported income
$ 60,860.96
On his individual income tax return for the year 1947 petitioner estimated *29 his gorss receipts to be $300,000, as follows: "My business consists of buying new or practically new cars and selling them at wholesale. My records of purchases and sales are inadequate to correctly prepare my income tax return. Income is computed from my total bank deposits as shown below: "Total Bank Deposits 1947
$326,846.71
Less Loans and Withdrawals
Redeposited
26,846.71
Gross Receipts
$300,000.00"
Petitioner then reported $7,398 as estimated net profit. Respondent determined petitioner's unreported income as follows: Income: Total deposits to banks
$413,692.22
Undeposited checks
53,798.00
Undeposited currency
14,247.20
484,737.42 [1]
Less
Transfers and re-deposits
3,733.50
Corrected business receipts
481,003.92
Expenses: Balance in bank 1-1-47
$ 1,095.95
Bank deposits
413,692.22
Total funds available
414,788.17
Less: Balance in bank 12-31-47
3,995.19
Total withdrawals
$410,792.98
17% of total withdrawals
69,834.81
Estimated business expenses
340,958.17
Add: Undeposited checks and currency
71,045.20
412,003.37
Corrected Income
69,000.55
Less: Income per return
7,398.00
Unreported Income
$ 61,602.55
*30 An analysis of a portion of the cancelled checks retained by Mr. Edge revealed that $29,212.34 was spent on nondeductible expenses. The total amount of checks drawn to cover business expenditures and automobile purchases was determined to be $169,318.29. The resultant percentage of $29,212.34 to the total expenditures is 17% This percentage has been applied to the total withdrawals from the bank accounts to determine the taxpayer's business expenditures. Petitioner based his own 1948 income tax return on the East Gadsden Bank deposits. First, he eliminated some $50,000 from his deposits as "kiting" and non-income deposits, then he reported $503,120 as total business receipts for that year, and $11,455.20 as net income from the sale of automobiles. However, on his return he did not include the deposits in the American National Bank. Petitioner received an aggregate of $19,637 which was not deposited in his East Gadsden Bank account, and, in addition, a net capital gain of $25 which was not reported on his 1948 return. Respondent increased petitioner's income *31 for 1948 by $19,662, the amount of these undeposited and unreported funds. On his 1949 return petitioner reported adjusted gross income of $2,512.65; he reported this as income from a partnership. Petitioner had total bank deposits for 1949 in the amount of $276,406.92, but he also received $9,245 which was not deposited. Petitioner had gross receipts for 1949 in the amount of $285,651.92. From these total gross receipts respondent deducted the sum of $117,318.80, the amount shown on the return for a purported partnership consisting of petitioner and M. A. Mitchell. Petitioner had gross receipts in 1949 in the amount of $168,333.12 which had not been reported for that year. From the sales and gross profit reported on the return for the purported partnership, respondent determined that the percentage of gross profit on the reported sales for 1949 was 10.58 per cent. He applied this percentage to the unreported gross receipts for 1949 to determine the understatement of income. The amount of petitioner's additional income for 1949 was $17,809.64. On his 1950 income tax return petitioner reported sales of $56,338.42. He deducted $48,810.90 as cost of sales and the amount of $3,978.85 *32 as business deductions. He reported a profit of $3,548.67. From an analysis of petitioner's bank account respondent determined that petitioner deposited $105,889.18 in 1950. He also received an additional $22,360 which was not deposited. Petitioner had gross receipts in the amount of $128,249.18 for that year. From the sales and gross profit reported on petitioner's return for 1950, respondent determined that the percentage of gross profit on the reported sales was 13.36 per cent. This percentage was applied to the unreported gross receipts to determine an unreported business income of $9,607.28; an adjustment of $500 for a capital gain was also added to petitioner's net income. In 1950 petitioner received $10,107.28 of unreported income. In 1946 petitioner had $5,000 of unreported merchandise purchases; in 1947, $4,000, and in 1948, $2,000. In 1948, 1949, and 1950 petitioner failed to make and file a declaration of estimated tax, and he also substantially understated his estimated tax for those years. For each of the taxable years before us petitioner filed a false and fraudulent return with intent to evade tax. Opinion The first issue we shall consider is whether petitioner *33 correctly reported his income for the years before us. Petitioner's position on this issue can be stated simply. He argues that the years 1946 through 1950 were years of a seller's market and that "by the use of a small amount of capital, [he] could turn his capital in a few days and make a small profit on each transaction." He further states that the nature of his business required him to run large amounts of money through his bank and that a determination of tax liability based on his bank deposits is not fair and just. In opposition to petitioner, respondent contends that petitioner's income was understated for each of the years before us and that petitioner's correct tax liability is that as determined in the deficiency notices. It is admitted that petitioner's tax liability could not be determined from his records or books - either such records were not kept, or if they were kept they were not available for determining petitioner's tax liability - therefore, under section 41 of the 1939 Code, the respondent is authorized to compute a taxpayer's income in accordance with a method which does clearly reflect income. In recomputing petitioner's income respondent's agents investigated *34 bank records, cancelled checks, court records, and records of the sale of real property. They contacted finance agencies, used car dealers, and some of petitioner's customers. From the information gleaned from independent sources, together with information from petitioner's own tax returns, respondent determined petitioner's income for the years before us. In general, the respondent determined petitioner's income by bank deposits and by the percentage of sales method. See , affd. , and Melvin E. Tunningley, 22 T.C. - (filed August 30, 1954). The burden is upon petitioner to prove that respondent's determinations are erroneous. For the year 1946 respondent has proved that petitioner received at least $143,599.01 of gross receipts which were composed of the following sums: (1) checks in the amount of $84,081.42 from the Finance Company; (2) cash down payments on automobiles sold by petitioner, $33,312.24; (3) trade-in automobiles having a value of not less than $3,751; (4) payments in excess of those reported to the Finance Company, $4,079.80; and (5) payments on automobiles not financed by the Finance Company, *35 $18,374.55. Petitioner reported on his 1946 return "estimated" gross receipts of $98,701. However, the evidence indicated that petitioner deposited $215,595.37 in banks during 1946. When respondent computed the deficiency for 1946 he used $159,561.96 as petitioner's gross receipts. From this sum respondent subtracted petitioner's reported receipts of $98,701 to give a difference of $60,860.96 of unreported income. In his determination for 1946, respondent concluded that unreported gross receipts in excess of the reported gross receipts were unreported income. Respondent made no adjustment for unreported cost of goods sold. If we were to approve respondent's determination without an adjustment for unreported cost of goods sold, the deficiency would be grossly exaggerated. On the other hand, petitioner's records affer no aid in ascertaining the actual cost of goods sold. But we are convinced from the record as a whole that there were unreported costs attributable to merchandise purchases, and these were not taken into account in the deficiency notice. We realize that there can be no precise determination of unreported costs, and that petitioner is responsible for the inadequacy *36 of the record. Therefore, we find that respondent's determination of 1946 unreported income of $60,860.96 should be reduced by $5,000 as an adidtion to cost of goods sold. In 1947 respondent determined that petitioner's gross receipts were $481,003.92 and his business expenses were $412,003.37. The difference between gross receipts and expenses was then adjusted by petitioner's reported income of $7,398. The difference of $61,602.55 was determined to be unreported income. Respondent's determination of 1947 unreported income, similar to that for 1946, does not take into consideration the fact that petitioner purchased certain automobiles for cash or at least partly for cash. Therefore, to adjust for this omission the determination of unreported income of $61,602.55 should be reduced by $4,000 which is an addition to cost of goods sold. Again, in 1948, petitioner deposited $564,202.28 in banks and received at least $72,660 which can not be traced to any bank deposits. In this year petitioner reported $503,120 as gross receipts, and a taxable income of $10,455.20. In addition to this reported income, respondent determined that petitioner had $19,637 of unreported business income. *37 Respondent's determination for 1948, like those for the two prior years, did not take into consideration certain unreported purchases. Therefore, his determination of unreported business income, when reduced by $2,000 as an addition to cost of goods sold, and his determination of a net capital gain of $25 are sustained. Next, in 1949, petitioner reported taxable income of $2,512.65. Even though this was reported as partnership income, there was no evidence in this proceeding regarding a partnership. Respondent found an additional $168,333.12 of unreported gross income. By using petitioner's own ratio of gross receipts to net profit, respondent determined that there was $17,809.64 of unreported income in the $168,333.12 of unreported gross receipts. Again, respondent's determination must be sustained. Respondent used a like method to determine petitioner's deficiency in 1950, that is, petitioner's unreported gross receipts were adjusted to find his unreported income. In this manner respondent determined that petitioner had $9,607.28 of unreported business income and $500 of unreported capital gains. Respondent must be sustained. In finding for the respondent we have considered *38 petitioner's allegations that large sums of money went through his hands without in fact being gross receipts. However, mere general statements, unsupported by specific proof, will not permit us to find that respondent has erred in his determination. In this respect it should be pointed out that some $50,000 was allowed by respondent for "kiting" in 1948. It also should be pointed out that, notwithstanding the testimony in petitioner's behalf that he made only $15 to $50 net profit on a single automobile sale, we do not have adequate proof of the number of cars sold. Therefore, without knowing the number of cars sold, petitioner's net income can not be computed on a basis of net profit per car, even if we could find as a fact the average net profit on all sales. The second issue we shall consider is whether some part of the deficiency for each year before us is due to fraud with intent to evade tax. To establish fraud by direct proof is seldom possible. Respondent's burden of proof is made difficult because in most instances the facts which evince fraud are usually within the exclusive knowledge of the taxpayer. The one imposing fact which permeates the entire record is the unexplained *39 variance between petitioner's reported income and the income as shown by this record. This variance, always in petitioner's favor, is repeated year after year for the 5 years before us. This pattern of unreported income in itself indicates a fraudulent purpose. See . On this fraud issue petitioner's failure to keep records of his income producing activities weighs against him. In fact, in , the failure to keep books was one of the reasons for sustaining the Commissioner's determination as to the fraud penalty. Another point which militates against petitioner is his failure to report income from all of his income producing activities. For example, in 1948, petitioner, reporting income on the basis of bank deposits, used the deposits in one bank when he actually made deposits in two. The large unexplained sums of money passing through petitioner's hands are also to be considered in determining fraud, and this evidence supports respondent's determination. When we view the entire record as a whole, the year after year pattern of unreported income, the failure to include certain *40 income producing rransactions, and the large unexplained sums of money passing through petitioner's hands, we are forced to conclude that petitioner had a fraudulent purpose in each of the years before us when he reported his income for tax purposes. We do not think that this is a case where petitioner has been negligent. His conduct was intentional, deliberate, and fraudulent and his whole purpose was based upon an intent to evade payment of tax. On the fraud issue respondent must be sustained. The final issue involves only the years 1948, 1949 and 1950. In these years respondent determined penalties under section 294(d)(1)(A), for failure to file declaration of estimated tax, and under section 294(d)(2), for petitioner's substantial underestimate of estimated tax. Petitioner has not proved that declarations of estimated tax were filed, nor has he shown that the failure to file these estimates was due to reasonable cause and not willful neglect. Likewise, since there was a substantial underestimate of estimated tax, the penalties as determined by respondent under section 294(d)(2) are sustained. . Decisions will be entered under Rule 50. *41 Footnotes
1. Mathematical error is as shown on copy of statement attached to deficiency notice and submitted with the petition.↩